## Case No. 11,494.

### QUANTITY OF DISTILLED SPIRITS.

[3 Ben. 70: [1] 2 Am. Law T. Rep. U. S. Cts. 23; 9 Int. Rev. Rec. 9.]

District Court, S. D. New York. Dec. 23, 1868.

INTERNAL REVENUE — ACT JUNE 30, 1864, § 48 — ACT JULY 13, 1866, § 26 — PRESUMPTION— EVIDENCE—REGULATIONS—BRANDING SPIRITS.

1. Under the 26th section of the internal revenue act of July 13th, 1866 [14 Stat. 154], rectifiers were bound to keep the book prescribed by that section and make the proper entries in it, whether the commissioner of internal revenue had prescribed any rules and regulations on the subject or not.

2. Where a rectifier had kept a book as so prescribed and had himself made an entry in it of a certain purchase, which entry did not comply with the requirements of the act, but he gave no evidence to explain the discrepancy. *held*, that the jury must take anything doubtful about the entry most strongly against him.

3. Where a party to a suit has in his possession evidence which he can give to clear up any

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

doubt, and he does not give it, there is a presumption that the evidence, if given, would corroborate that which has been given against him.

4. The fact that spirits are purchased for less than the amount of the tax upon them is sufficient evidence, in the absence of any explanatory circumstances, to show that the purchaser could not have believed that the tax was paid.

5. Where spirits were proved to have been found upon a rectifier's premises and no proof was given that the tax had been paid, *held*, that the jury were to assume, as matter of law and as matter of fact, that the tax had not been paid.

6. The 48th section of the act of June 30th, 1864 [13 Stat. 240], is not ambiguous, nor is the statute a penal one.

7. The fact that spirits were properly branded by United States inspectors is not evidence that the taxes on them had been paid.

At law.

BLATCHFORD, District Judge (charging jury). It is a subject of congratulation that this case, to which we are now devoting our attention for the seventh day, is drawing so near its completion. Notwithstanding the time it has occupied, and the zeal with which it has been prosecuted and defended by the counsel upon both sides, the issues which you are to pass upon will be found by you to be embraced within a very narrow compass, although the evidence applicable to those issues has taken a wide range. The case has resolved itself into a prosecution, by the government, upon two sections of the internal revenue law—the 26th section of the act of July 13th, 1866, and the 48th section of the act of June 30th, 1864, as subsequently amended.

I shall first direct your attention to the 26th section of the act of 1866. The questions for your consideration under that section divide themselves into three subjects of investigation. The first one is the spirits taken to this establishment [of Watson & Crary, Nos. 171, 173, and 175] Christopher street by Nelson in the spring of 1867. The second is the lot of spirits, called seventy-five barrels in the evidence, taken there, as appears by the evidence for the claimants, on the 1st, 4th and 5th of February, 1868. The third is the thirty barrels of spirits called the Duffy spirits, taken there on the 11th of February, 1868. The provisions of the 26th section of the act of 1866 are to this effect: "That every rectifier or wholesale dealer in distilled spirits shall enter daily in a book or books kept for the purpose, under such rules and regulations as the commissioner of internal revenue may prescribe, the number of proof gallons of spirits purchased or received, of whom purchased and received, and the number of proof gallons sold or delivered; and every rectifier or wholesale dealer, who shall neglect or refuse to keep such record, shall forfeit all spirits in his possession, together with the apparatus, tools, and implements used." Now, gentlemen, the requirements of this section of the statute are perfectly plain and unmistakable. There is no ambiguity and no confusion

about them. There is no room for any difficulty or embarrassment on the part of any one desiring to comply with the law. The language used in the section must be understood in its ordinary, plain, common-sense meaning. Where a rectifier or wholesale dealer is told that he is to enter daily in a book his receipts of spirits, of whom he receives them, and the number of proof gallons he receives, he can understand but one thing from that direction—that he is to do the thing every day, day by day, as he receives the spirits, upon the day on which he receives them. The section manifestly intends that he shall put down the day in the book. And the fact that, in practical construction, in acting upon this statute, these claimants did keep a book in which they did put down, day by day, apparently, the number of barrels, the number of proof gallons, the persons from whom purchased or received, and the date, shows that they understood what every man must understand by the law—that the party is not only to make the entries daily, but is to put down the day, so that it may be known upon what day he receives a given number of barrels, containing a given number of proof gallons, and the person from whom he receives them. Therefore, when we find this practical construction thus acted upon by these claimants, this recognition of what the law is, it is idle to speculate about what the law requires. There is no doubt whatever that the plan upon which this book was kept by the claimants is a compliance with the law requiring the party to put down the day, and the number of barrels, and the number of proof gallons, and the person from whom purchased or received. The only question is whether the law, as thus interpreted and recognized by the claimants themselves, has been complied with.

That the claimants were rectifiers of spirits is perfectly apparent. The eighteenth paragraph of the seventy-ninth section of the act of June 30th, 1864, as subsequently amended, defines what a rectifier is: "Every person, firm, or corporation who rectifies, purifies, or refines distilled spirits or wines by any process, or who, by mixing distilled spirits or wines with any materials, manufactures any spurious, imitation or compound liquors for sale, under the name of whiskey, brandy, gin, rum, wine, spirits, or wine bitters, or any other name, shall be regarded as a rectifier." That is the definition the law gives of a rectifier. A rectifier is not merely a person who runs spirits through charcoal, but any one who rectifies or purifies spirits in any manner whatever, or who makes any mixture of spirits with anything else, and sells it under any name, is a rectifier. Now, that these parties were rectifiers is quite apparent from the testimony, and is not disputed, as I understand it; and, therefore, it was their duty to make the proper entries in this book, and to make them whether the commissioner of internal revenue had pre-

scribed any rules and regulations on the subject or not. If he had made any, they were bound to comply with the rules and regulations. But if he had made none, they still were bound by law to make the entries. The rules and regulations are to be prescribed by the commissioner of internal revenue, merely to secure the proper form of making the entries; but, if there are no rules and regulations prescribed by that officer, the statute is nevertheless binding on the parties. It is alleged here, as I understand it, that the commissioner has made no rules and regulations that amount to anything, but has merely recited the statute, the only circumstance in addition being the requirement that the record shall be kept continuously. It appears, then, that these parties, without any rules or regulations being prescribed, have gone on and kept a book, which is substantially kept in compliance with the statute; and, therefore, in reason and sense, as well as in practice, it is shown that the requirement about rules and regulations is pure surplusage, and amounts to nothing in reference to this case. The parties being required thus to enter daily, that is on the day on which they received the spirits, the number of proof gallons received, and of whom received, the only question is, whether the statute has been complied with, or whether they have failed to comply with it in any one of the three cases that have been brought to your attention on the part of the government. If the claimants have failed to comply with the statute, then all the spirits found in their establishment, and all the apparatus, tools, and implements found there, that were used in their business, are subject to forfeiture.

In reference to the spirits taken to the establishment by Nelson in the spring of 1867, it is in evidence on both sides that spirits were taken there at that time. I shall not recapitulate the evidence, for it is fresh in your memory. The substance of the evidence of Nelson and Andrews, and of the other testimony on the part of the government in that connection is, that Nelson took there, during February, March, and April, 1867, spirits to the extent of four thousand gallons. It is contended on the part of the claimants that Nelson took there only twenty-five barrels, or rather that he took thirty-two barrels, and that seven of them were subsequently taken away, leaving but twenty-five barrels substantially received, containing only thirteen hundred and thirty-five gallons. That is the issue of fact between the parties on that subject; and it is for you to say, from the evidence, whether you believe that four thousand gallons were taken there in all, and that some was taken there in February and some in April, as well as some in March, or whether you believe that only thirteen hundred and thirty-five gallons were left there, being twenty-five barrels out of thirty-two that were taken there, and that those were taken there in March, as testified to by Mr.

Blanchard. Which one of those two stories you will believe, will depend upon your consideration of the evidence in the case, and upon the credit you give to the witnesses upon the two respective sides on the subject.

The only entry found in this rectifiers' book during February, March, or April, 1867, of any spirits received from William Stewart, (the spirits carried by Nelson having come from Stewart,) is an entry which is found upon the third line of the third page of the book. The two preceding entries upon the same page are under the date of "March 29," one of thirty-four barrels from John Schrievers, and another of ten barrels from Ezra Hill. Then follows the entry in question. In the column for the month is no mark at all. In the column for the day of the month is the figure "3," the preceding line having in the same column a couple of dots, and the top line having in the same column the figures "29," and in the column for the month the word "March." The entry on the next line below the third line is under the date of "April 1." Now this entry, which commences thus with the figure "3," contains, under the head of "Barrels or Packages," the figures "25;" under the head of "Purchased or Received, Proof Gallons," the figures "1335 $\frac{23}{100}$;" and under the head of "From Whom Purchased or Received," the words, "William Stewart." That is all there is in this book about any spirits received from William Stewart—25 barrels, 1,335 gallons—the entry as to the date being such as I have stated to you, that is, following March 29th and immediately preceding April 1st, is the figure "3," in the column for the day of the month. You have heard the testimony of Blanchard on that subject, as to when these spirits were received and how many barrels there were, and when they were dumped. He says he went home to see his family on the 30th of March, and that these spirits were dumped on that day.

This entry that I have read to you in regard to the twenty-five barrels is proved to be in the handwriting of George D. Crary, one of the claimants. The two entries which immediately precede, as well as the four which immediately follow this one, are also shown to be in the handwriting of Mr. Crary. It is quite apparent, therefore, that if any more light is needed to be thrown upon any doubtful question in regard to those twenty-five barrels, Mr. Crary possesses the information, because he made the entry; and, if there be any point about the testimony that is at all doubtful, you are to take it most strongly against the claimants, because Mr. Crary, having the means of clearing up all difficulty, the entry being in his handwriting, has given no testimony on the subject. That rule of law is applicable to every branch of this case. Wherever it is shown that a party to a suit has in his possession evidence which he can give to clear up any doubt, or to resolve any difficulty, and he does not give it, the jury

have the right to draw the presumption that the evidence, if given, would be in corroboration of that which has already been given against him. That rule is applied every day in seizure cases under the revenue laws, and has been enforced by the supreme court of the United States, and particularly in the case cited to you by the counsel for the government in summing up (the case of Clifton v. U. S., 4 How. [45 U. S.] 242), in which the opinion of the court was delivered by Mr. Justice Nelson, who presides in the circuit courts of this circuit. If, therefore, there be any doubt or difficulty in regard to this entry of these twenty-five barrels, that requires clearing up, the entry being in the handwriting of Mr. Crary, the fact, that he is not called as a witness on the subject, is to be taken as a very strong circumstance in corroboration of everything that has been shown on the other side.

Now, gentlemen, if you shall find that spirits were taken to that establishment in 1867, other than the spirits embraced in this entry of the twenty-five barrels, and that more spirits were received at that establishment than were entered in this book, then, under the 26th section of the act of 1866, everything found in the establishment is forfeited to the government; because, as I understand it, it is not claimed that there was any property found there, that is proceeded against in this suit, other than that described in the 26th section—that is, the apparatus, tools, and implements used in the business of rectifying. This suit does not concern the direct forfeiture of any spirits. I shall say nothing more on the subject of the Nelson or Stewart spirits.

We now pass to the spirits received there on the 1st, 4th and 5th of February, 1868, consisting of seventy-five barrels said to have come from Loeb Brothers, five barrels directly, and seventy through a broker by the name of Schloss. The evidence of Mr. Libby, the claimants' foreman, is substantially to this effect—that he received five barrels on the 1st of February, and took the proofs and gauges of their contents at the time, and set down on a piece of paper what he so took, and gave that paper into the hands of Mr. Crary himself on the morning of the 2d of February, the next day, but did not enter in the book that day the number of proof gallons. He also states, that, on the 4th of February, he received five barrels more, but did nothing with them except to lay them aside until the next morning; that on the 5th he received sixty-five barrels more; and that then, on the 5th, he went through those sixty-five barrels and the five received on the 4th, and gauged and took the proofs of the entire seventy, and put down the figures derived from this gauging and taking of proofs, upon a piece of paper. He states that the entry found in this book, purporting to be an entry on the 5th of February of seventy barrels, containing four

thousand and thirty-four proof gallons, received from Frederick Schloss, being the sixty-five barrels received on the 5th and the five barrels received on the 4th, was, so far as the proof gallons were concerned, not made until the 7th of February; that, on the 5th of February, he entered the number of barrels, that is the figures "70," and also the words "Frederick Schloss;" that he entered nothing else on the 5th; and that he did not enter the proof gallons until the 7th. Now, if that testimony is true, as given by Mr. Libby, it is quite apparent that he did not enter on the 5th, that is, on the day when the sixty-five barrels were received, the number of proof gallons contained in the sixty-five barrels, and that, therefore, the 26th section was violated. If it was violated, a forfeiture was incurred, and the government is entitled to your verdict on that section.

So, also, in regard to the other entry in question, that of the thirty barrels which Mr. Libby testifies were received on the 11th of February. He says that he entered on that day in the book what we find here—the figures "11" and the number of barrels, "30." There is no entry at all of the number of proof gallons. There are the words, "J. Duffy, Rectifier," in the column "From Whom Received;" but in the proof gallons column there is no entry whatever. Those spirits were received on the 11th, and the place was not taken into the custody of the government until the 14th.

Upon these naked questions of fact, this property would be condemnable for a violation of the 26th section. But, gentlemen, in addition to that, the evidence shows most conclusively that there was no difficulty, or hardship, or impracticability, or impossibility in making the entries of the number of proof gallons upon the same day on which the spirits were received; because, if you are to believe the testimony of the witnesses for the claimants, there were in the establishment the means of arriving at the number of proof gallons. There was an instrument by means of which they could and did ascertain how much a barrel would hold if it was full; also an instrument by which they could ascertain what vacant space there was in a barrel that had some liquid in it; and an instrument whereby they could tell the strength of the proof of the liquor. With those three things set down upon a piece of paper, it was, as Mr. Libby testifies to you, the work of from two to five minutes to calculate, and that he could do it, the number of proof gallons in any given barrel of spirits to which he had so applied the gauge-rod and the hydrometer. For the claimants to establish a course of business in violation of the law, and then to claim exemption because they established such a course of business, furnishes no excuse whatever. With the means of ascertaining the contents of a barrel, if Mr. Libby, charged with the duty, and a competent man, as it appears, had put down in the book the number of proof gallons, as ascertained by him from his best, and an honest, calculation made at the time, and it afterwards turned out, in point of fact, that he had made a mistake, there could be no confiscation and no forfeiture. An honest mistake of that kind is one thing, but an utter and total neglect to comply with the law is a very different thing.

These are all the questions to be submitted to you on the 26th section of the act of 1866. The only other question is one arising on the 48th section of the act of June 30th, 1864. That there were spirits in this place at the time it was seized, and spirits of a kind liable to duty under the internal revenue laws, and upon which the duty, if it had not been paid, ought to have been paid, is unquestionable. If these spirits, at the time of this seizure, on the 14th of February, 1868, were found on the place, in the possession or custody, or within the control, of any person or persons, for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws, or with design to avoid the payment of the tax, then, not only are the spirits forfeitable under this section, but also all tools, implements, instruments, and personal property whatsoever, in the place or building where the spirits were found. The main question under that section is contained in the words, "for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws, or with design to avoid the payment of said taxes." That is the material question in the case. It seems to be undisputed that, so far as regards the possession, custody or control of such spirits as were found there at the time, they were in the possession, custody and control of the claimants. No other person is shown, from the evidence, to have had any proper custody or control of them. The custody and control that Libby had was as a subordinate of Watson & Crary's, and, therefore, Watson & Crary, for the purposes of this case, they being the claimants in this suit, and having interposed a claim and answer, are to be regarded as the persons found in the possession, custody, and control of the spirits; and the only question is, whether they had the purpose of selling or removing those spirits in fraud of the internal revenue laws, or the design of selling or removing them to avoid the payment of the tax upon them.

It is necessary that I should here call your attention to a provision of the internal revenue law to which no allusion has been made by the counsel upon either side, and which, in my judgment, has a very strong bearing upon the questions which arise in this case under the 48th section. It is the 14th section of the act of March 2d, 1867 [14 Stat. 480], which provides, "that there shall be levied, collected and paid on all distilled spirits up-

on which no tax has been paid according to law, a tax of two dollars upon each and every proof gallon, to be paid by the distiller, owner, or any person having possession thereof." The same section goes on to provide, that the tax shall be a lien upon the spirits distilled until the said tax shall be paid. The lien for the tax follows the spirits everywhere, and any person into whose possession they come, without the tax on them having been paid, is bound to pay it. Now, so far as I recollect the evidence, there is no testimony on the part of the government, in this case, as to the quantity of spirits in gallons, or in any other appreciable measure, that was found in this place at the time of the seizure. Nor is there any evidence on the part of the government, as to the identity of the spirits that were found there, or where they came from, or any evidence on the part of the claimants, as to when the spirits that were found in the vats were put there, or as to where they came from, or as to how long they had been there. And, as I recollect the evidence, there is no evidence in the case on either side, whereby the jury can arrive at any definite or clear conclusion as to whether any of the spirits that Nelson took there in the spring of 1867, were or were not in that establishment when it was seized, or as to whether any of the spirits contained in the seventy-five barrels of spirits said to have come from Loeb Brothers, were or were not there at the time of the seizure, or as to whether any of the spirits contained in the thirty barrels of spirits that came from Duffy, were or were not there at the time of the seizure. The evidence on both sides on that subject, as I recollect it, leaves the whole matter in entire uncertainty, in regard to the identity of the spirits that were found there at the time of the seizure, as to whether they may have been some of the Duffy spirits, or as to whether they may have been some of the Loeb spirits, or as to whether they may have been some of the spirits which Nelson took there in the spring of 1867. If the quantity of spirits that was found there had been proved, that might be some sort of guide in the matter, because thirty barrels would make, I suppose, not over fifteen hundred proof gallons, on the average.

This point, to which I have just called your attention, comes up under the 48th section. If it was important to show whether the spirits found in the vats were or were not part of a particular lot of spirits, if it was important to show whether they were or were not part of the Duffy spirits, or were or were not part of the Loeb spirits, it was for the claimants to show it. They possess the knowledge or the means of knowledge, as to what the spirits were that were found in the vats. They turned them in there themselves, and it was for them to clear up any doubt or difficulty on that subject that might arise upon the evidence. It was for

them to show there were no spirits found in that establishment, at the time of the seizure, that were brought there by Nelson in the spring of 1867. As far as I recollect, we have no account of what became of any of the Nelson spirits, except that Blanchard says that twenty-five barrels were dumped on the 30th of March, and seven were sent away. There is no testimony that the contents of the barrels, other than the seven, ever went out of the establishment, or that they were not in the vats still. It was for the claimants to show that fact, if it be of any consequence or importance. The point of view in which it is important arises under the provision of the 48th section which says, that all spirits which shall be found in the possession of any person for the purpose of being sold, &c. That spirits were there, there is no doubt. The quantity is not stated, and what spirits they were does not appear. If they were some of the Nelson spirits, the circumstances attending the receipt of the Nelson spirits may, as you can well see, be of very great importance upon the question as to whether there was any purpose to sell or remove those spirits with design to avoid paying the tax on them. So, also, with regard to the seventy-five barrels of the Loeb spirits, and the thirty barrels of the Duffy spirits, if any of those spirits still remained in the establishment, the circumstances attending the acquisition or receipt of those spirits at the establishment, are circumstances to be taken into consideration by the jury upon the question as to what the design of the parties was in regard to the spirits, and in regard to selling and removing them. Therefore, the first questions the jury would naturally ask would be these: Were there spirits found in this establishment? What spirits were they? Where did they come from? Were they part of the Nelson spirits? Were they part of the Loeb spirits? Were they part of the Duffy spirits? We do not know. It was for the claimants to clear up any confusion on that subject. The government seize the place. They find spirits in the vats. They cannot tell where the spirits came from. But the claimants know, and it is for them to show; and, if there be any doubt, embarrassment or difficulty, the point must be resolved against the claimants, for they have not shown anything on the subject. They have not shown that the Nelson spirits ever went out of the place, or that they were not still in the vats. So with regard to the Loeb spirits, it does not appear what became of them after they were dumped, as Blanchard testifies, or whether they remained in the vats at the time of the seizure, or what quantity of spirits was in the vats. And the same in regard to the Duffy spirits.

If there were any spirits there, which these parties purposed to sell or remove in fraud of the law, or with design to avoid the payment of the tax, the spirits, and

everything in the establishment, are forfeited. Now, there being a tax upon the spirits of two dollars a proof gallon, you are to assume, as matter of law, for the purposes of this case, that that tax had not been paid upon any of the spirits that were found in this establishment at the time of the seizure. It was for the claimants to show whether or not the tax had been paid, and, as there is no evidence that it had been paid, you are to assume, as matter of law, and as matter of fact, that it had not been paid. Therefore, the only question for your consideration will be, whether these spirits, upon which the tax had not been paid, were in the possession of the claimants with the purpose on their part of selling or removing such spirits in fraud of the internal revenue law, or with design to avoid the payment of the tax.

When a tax of two dollars a gallon is put upon an article of this kind, and it is found in the possession of a party, the tax not being shown to have been paid, if the party purchased the article, the price he paid for it is a pretty good criterion of whether he had reason to believe the tax had been paid upon it or not. In this case you have, upon the subject of price, one piece of direct testimony, if you believe it—and whether you will believe it or not, is a question for your consideration solely—and that is the testimony of Andrews in reference to one bill, which he at first stated was $700 or $800, and afterwards corrected, by stating it was $500, for which he saw or received a check. He says, in regard to the spirits in that bill, which were some of the spirits that Nelson carried to the establishment, that Mr. Crary stated to him that the price was one dollar and twenty-five cents, or one dollar and thirty cents, a gallon. In regard to the seventy-five barrels of spirits from Loeb Brothers, and the thirty barrels from Duffy, there is no testimony, as I recollect it, in regard to the price paid, although it appears, as a matter of fact, by the testimony on the part of the claimants, that the seventy-five barrels from Loeb Brothers, and the thirty barrels from Duffy, were purchased spirits, or spirits bought by Watson & Crary, and not spirits received to be rectified for hire or wages. So, also, the testimony in regard to the Nelson spirits, if there be any testimony on the subject, is that it was purchased spirits. I refer to the testimony of the witness Andrews, in regard to the price of the Nelson spirits, because, in the view which I have presented to you, it being left wholly uncertain by the claimants whether some of the Nelson spirits were not still in the establishment, the Nelson spirits must be taken into consideration, under the 48th section, as well as the spirits that were in the seventy-five barrels and in the thirty barrels. As I have said to you, an important piece of evidence upon the question of whether a man believes that the tax has been paid upon spirits which he buys, is the price that he pays for the spirits, because no man can pay one dollar and twenty-five cents, or one dollar and thirty cents, a gallon, for spirits upon which there is a tax of two dollars a gallon, and honestly believe that the tax on those spirits has been paid. That is an utter impossibility. He may receive all the barrels in the world branded "tax paid," and yet, the very fact that he receives the spirits contained in them at the price for which he purchases such spirits in the market, must, in the absence of all circumstances to show why the spirits were sold for a less price than the tax itself, be convincing evidence to any honest mind that the tax has never been paid on the spirits. Now, with the knowledge on the part of the claimants, of what they paid for the Nelson spirits, and of what they paid for the Loeb spirits, and of what they paid for the Duffy spirits, the fact that they have not shown that they paid the price of two dollars and a half, or three dollars, or four dollars, a gallon, or more than one dollar and twenty-five cents, or one dollar and thirty cents, a gallon, is to be taken most strongly against them; and the fact that they have not shown that they paid more than enough to cover the tax on the spirits, is to be accepted by you, in the absence of any testimony to the contrary, as evidence that they paid for the spirits less than two dollars per gallon. It undoubtedly may happen that spirits may be honestly in the possession of a party, under circumstances where he has paid for them less than two dollars per gallon. Every case must be judged upon its own circumstances; and, in any case where a fair and reasonable explanation is given to show that the party has honestly dealt in the spirits, not having reason to believe that the tax had not been paid, the excuse will be recognized by a court and a jury. But the excuse must be shown, the reason must be shown, why the price was less than two dollars per gallon; otherwise, the jury are authorized to believe that the party could not have honestly supposed that the tax had been paid upon the spirits. The mere fact that he bought the spirits for less than two dollars a gallon is sufficient evidence, in the absence of any explanatory circumstances, to show that he could not have believed that the tax was paid. That is the same principle of law which I referred to before, in the matter of the entry in regard to the twenty-five barrels in Mr. Crary's handwriting—that, where a party is in possession himself of the means of clearing up a doubtful point, and does not do it, but, instead of that, resorts to all sorts of evidence on the subject, except the direct evidence which he himself could give, every doubt is to be resolved most strongly against him. This rule applies, also, to every material point in the case—to any conversation or any transaction which you may believe, from the testimony, to have taken place between any witness and Mr. Crary, or either of the claimants. If such conversation or transaction is not denied by

the testimony of the party with whom it took place, the fact that he does not deny it is to be taken most strongly against him, because, in this case, the claimants are competent witnesses for themselves, leaving only the question of credibility for the jury.

I believe, gentlemen, that I have called your attention, substantially, to all the views which it is important I should bring to your notice. If you shall find that any spirits were in the possession of Watson & Crary at their establishment in Christopher street, at the time of this seizure, for the purpose of being sold or removed by them in fraud of the law, or with design to avoid the payment of the tax on such spirits, you will find for the government.

I am asked by the counsel for the claimants to charge you upon a very long series of propositions, which it is my duty to go through with as rapidly as I may, consistent with a careful consideration of them, and to pass upon one way or the other. The propositions are these:

"1. Under section 48 of the act of 1864, the jury cannot find a verdict of condemnation and forfeiture, unless they find that the article seized was, at the date of seizure, in the possession or custody, or within the control, of the claimants for the purpose of being sold or removed by them in fraud of the internal revenue laws, or with a design to avoid payment of the proper taxes thereon." I have already charged you that that is true.

"2. The burden of proof is upon the government to establish that the property seized was in the possession of the claimants with the intent, on their part, of selling or removing it in fraud of the internal revenue laws, or with design to avoid the payment of the proper taxes." That is true, subject to the observations on the subject which I have made.

["3. The jury cannot find a verdict of forfeiture and condemnation of any tools, implements, instruments, or personal property which may have belonged to the claimants upon the premises in question, and which may have been seized, unless they also find that, at the time of the seizure of such tools, implements, instruments, or personal property, the claimants were in the possession of the raw materials from which dutiable spirits are manufactured, with the intent of manufacturing such raw materials into articles of a kind subject to tax, for the purpose of fraudulently selling such manufactured articles with the design to evade the payment of the proper tax thereon." That is not true. There is no such question in this case. No raw materials were seized at the place, and the proposition has nothing to do with any question involved in this case. I therefore decline to charge it.

["4. The raw materials intended by the statute are the primary sources whence the spirits are obtained, and do not include spirits in any stage of manufacture." That is a very true abstract proposition, but it has nothing

to do with this case. I therefore decline to charge it.

["5. The burden of proof is upon the government to establish such design or intent." That is a repetition of a previous proposition, and I have already stated that that is true, subject to the observations which I have made.] [2]

"6. The jury cannot find a verdict of condemnation or forfeiture under section 26 of the act of 1866, unless they find that the property in question belonged to a rectifier or wholesale dealer in distilled spirits." That is true. I have already charged it.

"7. If the claimants were either rectifiers or wholesale dealers in distilled spirits, there was no obligation upon them, under the law, to make any entries such as are required by this section, unless the jury find that the commissioner of internal revenue had made regulations regarding such entries." That is not true. I decline to charge it.

"8. Under this section, there was no obligation on the part of the claimants, as rectifiers or wholesale dealers, to make any entries of specific dates." That is not true. There was an obligation on them to make entries of specific dates.

"9. This section must be construed as an entirety, so as to give operation to all the provisions thereof." That is not true, and I decline to charge it.

["10. Under it there is no obligation on the part of a rectifier or wholesale dealer to make daily entries of the number of proof gallons of spirits of which he might be made the custodian or bailee, and of which the title remained in the depositor or bailor." That is an abstract question which has nothing to do with this case, and I decline to charge it.] [2]

"11. The statute only requires the number of proof gallons to be entered when the spirits are purchased by the person receiving the same." That is not true, and I decline to charge it.

["12. The reception of spirits on deposit for safekeeping or otherwise, without a purchase thereof, imposes no obligation to make any entry upon the person with whom the same are deposited." That is an abstract proposition that has nothing to do with this case. I therefore decline to charge it.] [2]

"13. There is no obligation to make any entry, unless the spirits are purchased and received." That is not true, and I decline to charge it.

["14. Until the purchase of the goods is complete, there is no obligation upon the purchaser to enter upon the book an inchoate purchase." That is an abstract question which has nothing to do with this case. I therefore decline so to charge.

["15. The purchaser has a right to retain the spirits purchased for a sufficient length of time to enable him to ascertain that they correspond in quantity and quality with the

---

[2] [From 2 Am. Law T. Rep. U. S. Cts. 23.]

kind described by the seller, and until such period of examination has elapsed, the sale and delivery is inchoate, and the purchase does not become a legally fixed fact." That may be true between purchaser and seller, but has nothing to do with the statute or case.] [2]

"16. There is no obligation upon the purchaser to make the entries in the book until he has had an opportunity to examine the quality and quantity of the purchase." That is not true. He is bound to make them daily.

"17. The law allows the purchaser a reasonable time to verify the quantity and quality of his purchase, and, unless the jury find that an unreasonable time had elapsed between the delivery of any of the spirits which the claimants may have purchased, and the entry thereof in the book, the jury cannot find a verdict against the claimants." I decline to charge that.

"18. Before the jury can find a verdict for the government, in this action, they must find that the claimants neglected and refused to keep such book, with intent to evade the provisions of the section in question." That is not true. The question of intent has nothing to do with the case. The forfeiture is imposed for the neglect, no matter what the intent is.

"19. The law is ambiguous." That is not true. The law is clear and unmistakable in all its provisions.

"20. In one reading it requires spirits received to be entered, no matter for what purpose they were received; and in another reading it requires the entry to be made when the spirits are purchased." That I decline to charge.

"21. This being a penal statute, the claimants are entitled to the benefit of this ambiguity." I decline so to charge.

"22. Unless the jury find that they neglected and refused, after they became the purchasers of any spirits, to make the proper entries within a reasonable time after such purchase had become legally complete, the jury cannot find a verdict for the government; and, unless the jury find that at the time the spirits were delivered to the claimants there was delivered to them an invoice or return showing the number of proof gallons contained in the casks or barrels delivered, the claimants were entitled to a reasonable time to ascertain such proof gallons." There is no doubt about that. But it is not a practical question in this case, because the testimony on the part of claimants shows that they had a reasonable time, and took it, and that there was no difficulty about making the entries.

"23. If the jury find that they did not employ more than a reasonable time to ascertain the number of proof gallons, the claimants are entitled to a verdict." I decline to charge that, because there is no question on that subject in the case.

"24. The jury cannot find a verdict of condemnation and forfeiture against any apparatus, tools, or implements used by the claimants, unless they find that the claimants were rectifiers or wholesale dealers, and that, as such, they neglected or refused to make proper entries in the proper book, with intent to evade the provisions of this section." There is no question of intent in the section. I, therefore, decline to charge that.

"25. Under the 26th section of the act of 1866, if a rectifier of distilled spirits shall enter or cause to be entered in a book kept for that purpose, the number of proof gallons of spirits purchased or received, of whom purchased and received, and the number of proof gallons sold or delivered, as soon as he, in the exercise of due vigilance, can ascertain those facts, so as to make the entries correctly, that is a substantial compliance with this section." I decline to charge that, except in so far as I have heretofore charged in accordance with it.

"26. If a rectifier of distilled spirits enters in the book, under the appropriate head, the number of proof gallons of spirits purchased or received, as soon as, by the exercise of reasonable diligence, he can ascertain the correct amount, that is a substantial compliance with the section in that regard, although such entry be not made on the day when the distilled spirits are purchased and received." I decline to charge in accordance with that, except as I have heretofore charged in accordance with it, and only to that extent.

["27. If a forfeiture is claimed under the said 26th section, the burthen of proof is upon the government to show a substantial violation of said section." I have charged substantially to that effect. Under section 26 the government must show a violation of that section. I have already charged that that is so.] [2]

"28. If the jury are satisfied, from the evidence, that the witness Nelson has wilfully and corruptly testified falsely in regard to any material fact in the case, the jury should disregard his evidence." That proposition is undoubtedly true. If a man wilfully and corruptly testifies falsely in regard to any material fact, the jury should disregard his evidence. Apply that rule to every witness in the case on both sides.

["29. The same proposition with reference to the witness Andrews. The same proposition with reference to the witness Verplanck. The same proposition with reference to the witness Calhoun." That is true. And so in regard to all the witnesses—Libby, Blanchard, Salinger, and all of them—that proposition is undoubtedly true.

["30. No raw materials, within the 48th section of the act of 1864, were found on the premises in question." That is true. It is

---

a matter of fact rather than a matter of law; but it is true.] [2]

"31. If the government has failed to prove, by the evidence in the case, that the articles on the premises in question were there for the purpose of being sold or removed by the claimants, or either of them, in fraud of the internal revenue laws, or with the design to avoid the payment of the taxes due the government, the verdict must be for the claimants, so far as the forty-eighth section of the act of 1864 is concerned." That is true. If the government has not made out a case under the forty-eighth section, it cannot have a verdict, and the verdict must be for the claimants.

"32. In order to establish their case it is incumbent on the government to prove that the taxes on the articles in question had not been paid, and that the claimants knew or had reasonable ground to believe that such taxes were not paid." That proposition I divide into two parts. It is not necessary for the government to prove that the tax had not been paid. You are to assume that it had not. But it is for the government to show that the claimants knew, or had reasonable ground to believe, that the tax was not paid, because, a person cannot have spirits in his possession with design to avoid the payment of the tax on the spirits, unless he knows, or has reasonable cause to believe, that the tax on them has not been paid.

"33. If the claimants, at the time they purchased and received the spirits on the premises in question, had reasonable ground to believe that the taxes on said spirits had been paid, the verdict on the forty-eighth section should be for the claimants." That is not a correct proposition. In the first place, it does not appear, by any evidence on the part of the claimants, when they did purchase and receive the spirits found on the premises in question. Moreover, if a person, at the time he purchases and receives spirits, has reasonable ground to believe that the tax on them has been paid, and afterwards finds out that the tax on them has not been paid, the spirits will still be liable to seizure. The instruction prayed refers the whole thing to the time when the party purchases and receives the spirits, and the proposition is, that if he then has reasonable ground to believe that the tax has been paid, the spirits can never be liable to seizure. The statute is just the other way. The statute provides, that if the spirits are found in the possession of any person for the purpose of being sold or removed in fraud of the law, they shall be forfeited. A person may, when he receives the spirits, have an idea that taxes on them are paid, and he may keep them some time, and during that period may find out that the taxes have not been paid. In such a case, after he finds out that the taxes have not been paid, the spirits are in his posses-

sion with notice that the taxes on them are not paid. The proposition, that the question is whether, when these parties received the spirits, they had reasonable ground to believe that the taxes on them had been paid, is not sound.

"34. In determining whether the claimants had or had not reasonable ground to believe that the taxes on said spirits had been paid, the jury should take into consideration the fact whether the barrels or casks containing said spirits were properly branded at the time they were received by the claimants." That is true. You must take the fact of branding for what it is worth.

"35. If the jury believe from the evidence that the barrels or casks containing said spirits were properly branded at the time they were received by the claimants, the jury have a right to infer that the claimants received said spirits in good faith, and believing that the taxes on them had been paid." I decline to charge that. You are to take into consideration that evidence, with all the other evidence. You are not to draw an inference merely from that fact alone.

"36. If the spirits in question, at the time they were received by the claimants, were properly branded, by the United States inspectors having legal authority to brand them, as tax-paid, the fact that said spirits were so branded, in the absence of any proof of fraud, is evidence that the taxes upon them had been paid." That is not so. It is evidence of nothing except that the barrels were so branded.

"37. If there be any reasonable doubt arising upon the evidence, as to whether the government have established their case, within the rules of law applicable to the subject, the verdict should be for the claimants." That is undoubtedly true. The government must make out their case. They must make it out by a preponderance of evidence. It is not like a criminal case, where the defendant is entitled to the benefit of a reasonable doubt of guilt, but the government must make out their case by a preponderance of evidence.

"38. In any legal aspect of the case, it is incumbent on the government to prove (1.) That the taxes on the spirits, or some portion of them, found on the premises at the time of the seizure, were not paid." That is not true. I charge you to the contrary. You are to assume that the taxes were not paid, because the claimants have not shown that they were paid.

"(2.) That the claimants, or one of them, knew or had reasonable ground to believe that the taxes had not been paid." That is true. I have already charged you that.

"(3.) That the spirits were on the premises for the purpose of being sold or removed in fraud of the internal revenue laws, or for the purpose of avoiding the payment of the taxes." That is true.

"39. If the government has failed to prove any of the propositions above named, the ver-

dict should be for the claimants, under the forty-eighth section." That is not correct, because it embraces the proposition about the burden of proof as to the payment of the taxes.

"40. Inasmuch as there is no proof on the part of the government that the taxes were not paid on the spirits found on the premises at the time of seizure, the verdict should be for the claimants, on the forty-eighth section." I decline to charge that.

"41. Even if the spirits which Nelson testifies he delivered at Watson & Crary's establishment were delivered by him as he states, and the taxes on them were not paid, that fact would furnish no reason for the condemnation of the property on the premises, as there is no proof that these spirits, or any portion of them, were on the premises at the time of the seizure." I decline to charge that, because there is no proof given on the part of the claimants that those spirits were not on the premises at the time of the seizure, and it was for the claimants to show what the spirits were that were found on the premises. They had the means of knowledge on the subject.

"42. The non-production of testimony by the claimants does not relieve the government from the necessity of proving their case where they, the government, have the burden of proof." That is true as an abstract proposition, and, also, as applicable to this case; but I have already charged you as to what the real effect of the non-production of testimony by the claimants is.

Now, gentlemen, I believe you understand this case by this time, and I commit it to your consideration, satisfied from the patience with which you have listened to the trial. that you will bestow equal care and attention upon the verdict which you are to render.

The jury rendered a verdict for the government on the 20th section of the act of 1866, and the 48th section of the act of 1864.